*Court of Quarter Sessions, Dauphin County, December 5th,* 1867.

### De Carlton *v.* The City of Harrisburg.

A city is bound to pay the damages caused by the opening of its streets, lanes, and alleys, although by its charter the county in which it was situated was liable, when a subsequent act of Assembly requires it to do so.

Such a law is constitutional, as the legislature has the power to change a city charter, and is not made invalid by the fact that the creditor must obtain his money from a less solvent debtor. The city is liable even when the petition for opening the streets and assessing the damages was presented to the court before the passage of the act, if the damages were not awarded and confirmed after it became a law.

By the Court.—Applications have been made in several cases by those whose property was injured by the opening of streets in the city of Harrisburg, for an order on the council to pay them respectively the amount of damages assessed in their favor by viewers appointed by the court, and the reports confirmed; and in one case of like situation the party injured has made application for an order on the county commissioners. All of the cases present but one question : Is it the duty of the city of Harrisburg, or of the county of Dauphin to pay these damages ? The 33d section of the act of March 20th, 1860, incorporating the city, appoints certain commissioners to lay out avenues, streets, lanes, and alleys in the new or extended portions of the city; also to make alterations in some parts of the old portion, and present a draft with proper descriptions to the Court of Quarter Sessions of Dauphin County, which, if approved by the court, is to be recorded, and all of the streets, etc., so located, are to be public highways.

The thirty-fifth section provides in substance that the mayor and council of the city may, by ordinances, from time to time direct the streets to be opened, whereupon viewers are to be appointed by the court to determine the amount of damages the owners of property may have sustained by reason of their grounds being injured or occupied by the opening of the streets. On the approval of the reports, the county of Dauphin is required to pay the damages assessed within six months thereafter, and no such street, etc., can be opened until the damages are paid, or adequate security given to the owners therefor. It is further provided that after the expiration of one year, execution may issue against the county to collect the amount due. The report made by the commissioners was not approved by the court, but, so far as concerns the streets in question, was confirmed by the law of April 1st, 1863. On the 4th day of April, 1866, an act was passed, probably intended to apply to these streets, but really relating to public roads only, attempting to throw the damages assessed on the boroughs and townships through which they were opened. The

[De Carlton *v.* The City of Harrisburg.]

proviso to that act shows that the streets of the city were not embraced, as all had been previously laid out by competent authority. Next comes the act of March 12th, 1867 (P. L., p. 402), on the proper construction of which these cases turn. It is provided " that all street and road damages hereafter awarded and confirmed to the owners of property in the county of Dauphin, through which public streets or roads are or may be opened, shall be paid by the city, borough, or township in which said street or road is or may be located." The second section of this act repeals that of March 31st, 1866, relating to road damages in the county of Dauphin, but makes no mention of the charter law of 1860. All the streets now in question were ordered to be opened and graded by the city council, and petitions were presented to the president of that body to have the damages assessed. In every case this was done before the enactment of March 12th, 1867, already cited, but, owing to continuances of the orders to the viewers, none of the reports were made before the 13th of April, 1867, and were subsequently confirmed at various times. The damages were therefore " *awarded and confirmed*" in every case after the enactment of the law. If this were a new statute, standing isolated and alone, it could not be pretended that the city of Harrisburg could avoid a payment; but it is contended that the burden remains on the county of Dauphin, because there is no repeal of so much of the act of 1860 as throws that duty upon it, nor is there a clear and necessary inconsistency between the two enactments, and the former law is not to be repealed by implication. It is very true that implied repeals are not to be favored, and generally negative words must be used, else the two enactments will be construed to stand together, unless it appears clearly that they are repugnant in their nature, and then the latter is always deemed a repeal of the former, according to the legal maxim, *leges posteriores priores contrarias abrogant.* Are not these laws clearly inconsistent with each other? The first commands the county of Dauphin to pay; the latter declares that the city, borough, or township in which the street or road is located, shall make payment. It is not disputed but that the damages were " *awarded and confirmed*" in every case after the passage of the later statute. The two are in our opinion irreconcilable, and we must be governed by the latest act of Assembly, as the last expressed will of the legislature. There is no doubt or question as to the actual intention. The people of the county complained, and with good show of reason, that there was a desperate disregard of economy on the part of the city authorities in having streets opened and the damages assessed in cases where they would not be required for public use for many years to come, and by means thereof, the county of Dauphin had been obliged, in the course of less than three years, to pay damages to an amount exceeding

one hundred and forty thousand dollars. It was deemed expedient that each township, borough, and city should pay its own damages, and they would thereby be deterred from opening unnecessary streets and roads. The act of 1866 was intended to effect this object, but was so lame in its provisions as to become utterly impotent. Its place was supplied by the present law, which this court has no right to disregard or explain away. It is said, however, that the act of 1867 is in violation of the Constitution, as it throws additional burdens upon the city, in violation of its charter, and also takes away the right of the property-holder to recover damages from a perfectly solvent corporation, shifting his claim over upon one of more doubtful solvency. Independent of the second section of the first article of the Constitution, giving the legislature unlimited power over corporations, it always had full control of those of this character.

Old powers could be taken from and new duties imposed upon municipal or public corporations at the will of the law-making power. This the city was bound to know when it extended its boundaries and obtained its charter. The property-holder had no such rights against the county by the mere location of the street as would prevent the shifting of his remedy against another municipality of which he was a member, and in which his lot was located. The right was at best but *contingent and inchoate, not determined and vested.* It is fully met by the case of Gault's Appeal (9 Casey, 94), and the most that can be said of this legislative arrangement is that the *remedy is changed,* a power always conceded to the legislature by numerous judicial decisions, is not prohibited by the organic law, and it infringes on no constitutional right.

This question does not arise so far as regards the property-owners in any case before us excepting one. The parties ask for orders on the city authorities to make payment. If they have a less solvent debtor it is in conformity with their own applications, and *volenti non fit injuria.* One claimant demands an order on the county ·commissioners to discharge his assessment. We are of the opinion that he is not entitled to it, for the reasons already given. The act of 1867 virtually abrogates that portion of the act of 1860, which imposes the duty of payments on the county of Dauphin. Nor has this property-holder any reason to complain on account of being turned over to a less solvent debtor, even supposing such to be the case, as no one can intrude upon his ground or disturb his possession until the damages are paid, or amply secured. Besides, the statute prescribes another remedy: if the claim is not discharged within a year the law gives him an execution against the county. This method must be adopted to collect the money, not an order, to be enforced by a mandamus, or attachment.

[Eberly *v.* Rowland.]

It is the duty of the court to make an order on the city authorities to discharge all of these confirmed reports, where the same is demanded by the persons in whose favor the damages have been or may be assessed, which will be done from time to time.   If any of the confirmations were irregular, or the action of the viewers not sanctioned by law, it was the duty of the city officers to file exceptions, and support them by proof.   In each of the cases under consideration the reports were confirmed without objection.

AFFIRMED BY THE SUPREME COURT, May 27th, 1868.   Not reported.

*Kunkel and Simonton, for plaintiff.*

*Alricks and Lamberton, for defendant.*